UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KAREN SMITH,

                         Plaintiff,

    -against-

MERCY MEDICAL CENTER and
AESCULAP, INC.,

                         Defendants.
-------------------------------------------------------X

**<u>OPINION AND ORDER</u>**
16-cv-1814 (SJF)(ARL)

**FILED
CLERK**

4:02 pm, Jun 06, 2017

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**FEUERSTEIN, District Judge:**

       Plaintiff Karen Smith ("Plaintiff" or "Smith") commenced this action against Defendants

Mercy Medical Center and Aesculap, Inc. (together, "Defendants"), seeking redress under: (i)

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (ii) the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; (iii) the Fair Labor

Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*; and (iv) the New York Labor Law

("NYLL"), N.Y. Lab. Law § 190 *et seq. See* Docket Entry ("DE") [1]. Presently before the Court

are: (i) Mercy Medical Center's ("Mercy") motion to dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6); (ii) Aesculap, Inc.'s ("Aesculap") motion to dismiss

Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). DE [21], [26]. Plaintiff opposes

Defendants' motions to dismiss and seeks leave to file an amended complaint. DE [24], [27]. For

the reasons set forth herein, Defendants' motions to dismiss are granted in part and denied in part.

**I.      BACKGROUND**

       Unless otherwise noted, the following facts are drawn from Plaintiff's Proposed Amended

Complaint ("PAC"), DE [24-1], and are accepted as true for purposes of the instant motions.[1]

---

[1] Although Defendants moved to dismiss Plaintiff's Complaint, in opposition to the instant motions, Plaintiff
submitted a proposed amended complaint in which she alleges additional facts, but asserts the same causes of action
against the same defendants. DE [24-1]. Where, as here, a proposed amended complaint submitted in response to a
motion to dismiss asserts the same causes of action against the same defendants, the court may consider the sufficiency

A. **Factual Background**

1. The Parties

Mercy is a hospital engaged in the medical care business, and is located at 1000 North Village Avenue, Rockville Center, New York 11570. *See* Proposed Am. Compl. ("PAC"), DE [24-1], ¶¶ 6, 15-16. Aesculap is a California corporation with a principal place of business located at 3773 Corporate Parkway, Center Valley, Pennsylvania 18034. *Id.* at ¶ 11. Aesculap is engaged in the surgical instrument supply business, and, at all relevant times, "operated as a staffing agency for medical facilities, including hospitals like Mercy." *Id.* at ¶¶ 12-13. Plaintiff is a "black African-American woman and resident of the County of Queens, within the State of New York." *Id.* at ¶ 10.

In approximately October 2009, Aesculap hired Plaintiff as a Procedure Cost Maintenance System ("PCMS") Coordinator and assigned her "to work exclusively for Defendant Mercy" in the Central Sterile Department. *Id.* at ¶¶ 17-18, 32, 36. As a PCMS Coordinator, Plaintiff's job responsibilities "included cleaning and preparing surgical tools for use by doctors at Mercy," which she did on site at Mercy "under Defendants' collective supervision." *Id.* at ¶¶ 31-34. Smith alleges that Aesculap had authority over payroll decisions, and that both Mercy and Aesculap: (i) had the authority to terminate employees assigned by Aesculap to work at Mercy; (ii) supervised and exercised control over employees assigned by Aesculap to work at Mercy; and (iii) had the authority to discipline employees assigned by Aesculap to work at Mercy. *Id.* at ¶¶ 25-26.

---

of the allegations in the proposed amended complaint. *See Claes v. Boyce Thompson Inst. for Plant Research*, 88 F. Supp. 3d 121, 125 (N.D.N.Y. 2015) (considering the sufficiency of the plaintiff's allegations in a proposed amended complaint submitted in response to the defendant's motion to dismiss); *see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (analyzing the defendant's motion to dismiss with respect to the allegations contained in the plaintiff's proposed amended complaint).

Accordingly, Plaintiff alleges that, at all relevant times, both Mercy and Aesculap were her joint employers within the meaning of the FLSA and NYLL.  *Id.* at ¶¶ 23, 27, 28.

      2.  <u>Discrimination Allegations</u>

In 2013, Mercy hired non-party Bivin Thomas as a manager in the Central Sterile Department.  *Id.* at ¶ 36.  From the time that Thomas was hired in 2013 until Smith was terminated in December 2014, Thomas "supervised Plaintiff's work and was involved in directing the day-to-day activities of Plaintiff."  *Id.* at ¶ 37.  According to Plaintiff, "[s]oon after becoming manager Thomas started treating Plaintiff differently than other employees."  *Id.* at ¶ 38.  In the summer of 2014, Aesculap hired a new PCMS Coordinator named Raj "to serve as a substitute when Plaintiff was not available."  *Id.* at ¶ 39.  According to Smith, "Raj and Thomas are both Indian or of Indian descent."  *Id.* at ¶ 40.  Plaintiff alleges that when Aesculap hired Raj, Thomas "began treating Raj more favorably than Plaintiff."  *Id.* at ¶ 41.  For example, "Thomas regularly admonished Plaintiff for speaking to her co-workers during business hours."  *Id.* at ¶ 42.  Smith further alleges that, whereas she was not allowed to speak to her coworkers, "Thomas and Raj regularly engaged in conversations during work hours, many times not related to work."  *Id.* at ¶ 43.  According to Plaintiff, "[t]his disparate treatment continued until [her] termination in December 2014."  *Id.* at ¶ 44.

On December 2, 2014, an Aesculap representative, non-party Robert Hensel, asked Smith to take her own car to an off-site meeting at a nearby Dunkin' Donuts.  *Id.* at ¶ 45.  Plaintiff complied with Hensel's request, and attended the meeting with both Hensel and non-party PCMS Manager Phil Eisenbeiss.  *Id.* at ¶ 46.  At the meeting, Eisenbeiss told Plaintiff that she was terminated as PCMS Coordinator, effective immediately.  *Id.* at ¶ 47.  When Smith asked why she was being terminated, Eisenbeiss "stated that 'the [operating room] had a problem with

[Plaintiff's] personality' and that Aesculap wanted 'someone different so they could keep the contract [with Mercy].'" *Id.* Shortly after Plaintiff's termination, Defendants hired Raj to replace Smith as a full-time PCMS Coordinator at Mercy. *Id.* at ¶ 48. According to Plaintiff, "the reason given to [her] for her termination . . . is not true," and "Thomas proffered the false statement that Plaintiff had a personality conflict with him and the O.R." *Id.* at ¶¶ 49, 51. Smith further alleges that she "has never had a conflict with the [operating room]" and that she "was terminated because of her race, and/or national origin." *Id.* at ¶ 50.

### 3. Unpaid Overtime Allegations

According to Plaintiff, the position of PCMS Coordinator "required only a High School Diploma or GED and one year experience." *Id.* at ¶ 55. Although a "Sterile Processing Certification" is preferred, it is not required. *Id.* As a PCMS Coordinator, Plaintiff "performed non-exempt work such as decontaminating instrument sets and assembling instrument sets." *Id.* at ¶ 54. Throughout the course of her employment for Defendants, Smith was scheduled to work five (5) days per week, from approximately 9:00 a.m. until 6:00 p.m., at a rate of pay of twenty-three dollars and ninety-nine cents ($23.99) per hour. *Id.* at ¶ 56. According to Plaintiff, although she was scheduled to work forty (40) hours per week, she "worked at least two (2) days per week until as late as 8:00 p.m. during the week and also worked an additional 8 hours at least two (2) weekends per month." *Id.* at ¶ 57. Accordingly, Smith alleges that she "worked at least 44 hours to as much as 52 or more hours per week." *Id.* at ¶ 58. However, because "Defendants have exclusive possession of any records of the number of hours worked by Plaintiff each week," Plaintiff alleges that she "cannot at this time state the exact number of hours she worked each week other than to state she worked until 8:00 p.m. at least two (2) weekdays per week and at least an additional two (2) weekend days each month." *Id.* at ¶ 60. According to Smith, "Defendant paid

[her] for the first 40 hours she worked each week but did not pay her for any hours worked over forty each week." *Id.* at ¶ 59.

### B.  Procedural Background

On June 19, 2015, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") under Charge Number 520-2015-02452, alleging discrimination on the basis of her sex, race, and national origin. *Id.* at ¶ 9.  The EEOC was unable to conclude that probable cause existed that Defendants discriminated against Plaintiff, and, on January 14, 2016, the EEOC issued Plaintiff a Right to Sue. *Id.* at Ex. A.  On April 14, 2016, Smith commenced this action against Mercy and Aesculap, seeking to recover for Defendants' alleged discrimination and failure to pay minimum and overtime wages.  DE [1].  Plaintiff asserts claims against both Defendants arising under: (i) Title VII and the NYSHRL for race and national origin discrimination; and (ii) the FLSA and NYLL for unpaid overtime wages. *Id.* at ¶¶ 63-80.

On September 2, 2016, both Mercy and Aesculap filed motions to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  DE [21], [26].  Mercy and Aesculap advance substantially similar arguments, claiming that Plaintiff's Complaint should be dismissed because, *inter alia*, Plaintiff fails to plausibly allege that she:  (i) was terminated as a result of her race or national origin; and (ii) worked in excess of forty (40) hours in a given week such that she is entitled to recover unpaid overtime compensation. *See* Mercy Medical Center's Memorandum of Law in Support of its Motion to Dismiss the Complaint ("Mercy's Mem."), DE [23], at 6-21; *see also* Memorandum of Law in Support of Defendant Aesculap Inc.'s Motion to Dismiss the Complaint ("Aesculap's Mem."), DE [27], at 4-12.  In opposition, Smith argues, *inter alia*, that Defendants' motions "should be denied because [Plaintiff] has properly stated causes of action for race/national origin discrimination under Title VII of the Civil Rights Act and New York Human

Rights Law, and for failure to pay overtime in violation of the Fair Labor Standards Act and New York Labor Law." *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl.'s Opp'n"), DE [24], at 1. Plaintiff also submitted a Proposed Amended Complaint in which she alleges additional facts, but asserts the same causes of action against Mercy and Aesculap, and further argues that, "[i]n the alternative, the Court should grant [her] leave to file her PAC." *Id.*

## II.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court's consideration is limited to:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citations omitted); *see also Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) ("The court's consideration on a

motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.").

### B.  Fed. R. Civ. P. 15

Motions to amend pleadings are governed by Fed. R. Civ. P. 15, which provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave [to amend] when justice so requires and such leave is in the court's discretion.") (internal quotation omitted).  Courts interpret Fed. R. Civ. P. 15 liberally.  *See Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("Federal Rule of Civil Procedure 15(a) dictates that motions to amend complaints be liberally granted absent a good reason to the contrary . . . .").  Generally, leave to amend a complaint should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party."  *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).  An amendment is futile if "the proposed claim could not withstand a Fed. R. Civ. P 12(b)(6) motion to dismiss."  *Salazar v. Browne Realty Assocs., L.L.C.*, 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011).  Therefore, a proposed amended complaint must "contain enough allegations of fact to state a claim for relief that is 'plausible on its face.'"  *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (quoting *Bell Atl. Corp.*, 550 U.S. at 570, 127 S. Ct. at 1974).  When a party opposes a motion to amend on futility grounds, "the moving party must merely show that it has at least colorable grounds for relief."  *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at *3 (S.D.N.Y. Apr. 5, 2010) (internal quotation omitted).  On a motion to amend, "the Court is required to accept the material facts

alleged in the amended complaint as true and draw reasonable inferences in the plaintiff's favor." *Mendez*, 2 F. Supp. 3d at 451 (citing *Ashcroft*, 556 U.S. at 678-79, 129 S. Ct. at 1949).

## III.   DISCUSSION

As discussed above, Plaintiff asserts claims arising under:  (i) Title VII and the NYSHRL for race and national origin discrimination; and (ii) the FLSA and NYLL for unpaid overtime compensation.  PAC ¶¶ 63-80.  Applying the standards outlined above, and for the reasons set forth herein, Defendants' motions to dismiss are granted in part and denied in part.

### A.   Discrimination Claims under Title VII and the NYSHRL

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Similarly, the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice [f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  Courts in the Second Circuit have observed that the same standard applies to claims of employment discrimination arising under Title VII and the NYSHRL, and that such claims are both analyzed under the *McDonnell-Douglas* burden-shifting framework.  *See Fanelli v. New York*, 51 F. Supp. 3d 219, 230 (E.D.N.Y. 2014) ("[T]he same standard is used when analyzing Title VII and NYSHRL claims."); *see also McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824-25 (1973) (establishing the burden-

shifting framework applicable to claims arising under Title VII and the NYSHRL); *Trane v. Northrop Gruman Corp.*, 94 F. Supp. 3d 367, 374-75 (E.D.N.Y. 2015) (observing that discrimination claims arising under Title VII and the NYSHRL are reviewed identically and that "[s]uch claims generally fall under the [*McDonnell-Douglas*] burden-shifting framework"). Under the *McDonnell-Douglas* burden-shifting framework, "a plaintiff first must establish a *prima facie* case of discrimination based on race." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). If the plaintiff establishes a *prima facie* claim for discrimination, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the employee's dismissal." *Id.* If the employer articulates a legitimate, non-discriminatory reason for the employee's dismissal, "then the plaintiff has the burden of showing that the defendant's nondiscriminatory reasons were pretexts for discrimination." *Trane*, 94 F. Supp. 3d at 375.

To state a *prima facie* claim for race or national origin discrimination under either Title VII or the NYSHRL, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 247 (E.D.N.Y. 2015) (quoting *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, No. 13-CV-3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015)). A plaintiff may establish a claim for discrimination "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-677, 2016 WL 8711358, at *3 (E.D.N.Y. May 20, 2016) (holding that "a plaintiff must plausibly allege facts that would support a finding that she suffered an adverse employment action and has at least minimal support for the proposition

that the employer was motivated by discriminatory intent") (internal quotation omitted).  The Second Circuit has held that a plaintiff may demonstrate an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."  *Graham*, 230 F.3d at 39; *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.") (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably."). Where a plaintiff alleges that an employer treated similarly situated employees of a different race more favorably, the plaintiff must compare herself to employees who are "similarly situated in all material respects."  *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997).

Plaintiff fails to allege facts sufficient to support a plausible inference of discrimination based upon race or national origin.  According to Smith, Defendants violated Title VII and the NYSHRL by "wrongfully terminating her because of her race and/or national origin."  PAC ¶¶ 64, 68.  However, Smith's allegations, even accepted as true, do not support an inference that her race or national origin were motivating factors behind her allegedly wrongful termination.  Smith alleges that, whereas Thomas "regularly admonished Plaintiff for speaking to her coworkers during business hours," Thomas and Raj "regularly engaged in conversations during work hours, many times not related to work."  *Id.* at ¶¶ 42-43.  According to Plaintiff, "[t]his disparate treatment

continued until Plaintiff's termination in December 2014." *Id.* at ¶ 44. As an initial matter, Plaintiff does not allege that Thomas's admonishments were an adverse employment action sufficient to establish a claim for discrimination under Title VII or the NYSHRL. Rather, Plaintiff premises her discrimination claim upon her allegedly wrongful termination. *Id.* at ¶¶ 64, 68. However, although Smith alleges that "Thomas proffered the false statement that Plaintiff had a personality conflict with him and the O.R." that resulted in her termination, *see id.* at ¶ 51, she neither alleges that Thomas proffered the allegedly false statement as a result of her race or national origin nor claims that Thomas's allegedly race-based admonishments were a factor in her termination. To that end, Smith does not allege that Thomas actually requested that Plaintiff be terminated, but rather, alleges that Thomas merely stated that he "had a problem with [Plaintiff's] personality," and that *Aesculap* "wanted someone different so they could keep the contract" with Mercy. *Id.* at ¶ 47 (internal quotation omitted). As Plaintiff's own allegations demonstrate that Aesculap's decision to terminate Plaintiff was motivated by a desire to maintain its contract for staffing services with Mercy, Plaintiff fails to allege that her race or national origin were motivating factors behind her termination, and her allegations are therefore insufficient to support an inference of discrimination under Title VII or the NYSHRL. *See Haynes v. Capital One Bank*, No. 14-CV-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (holding that the plaintiff failed to state a claim under Title VII or the NYSHRL where, "aside from one ambiguous remark made by her branch manager," the plaintiff "fail[ed] to allege any facts that suggest[ed] her termination or any other adverse employment actions were connected to her race"); *Soloviev*, 104 F. Supp. 3d at 249 (holding that the plaintiff failed to state a claim under Title VII or the NYSHRL where "he ha[d] done no more than point to various ways in which he [felt] he was mistreated and argue[d] that it must have been because of his gender, race, and national origin") (internal

quotation omitted).  As Plaintiff fails to state a *prima facie* claim for discrimination under Title VII or the NYSHRL, the burden does not shift to Defendants to proffer a non-discriminatory reason for Plaintiff's termination.

Relying upon *Henny v. New York State*, 842 F. Supp. 2d 530 (S.D.N.Y. 2012), Plaintiff argues that she "may meet her *de minimis* burden of proving an inference of race discrimination by showing that she was replaced by someone of the same national origin as the supervisor that was involved in her termination."  Pl.'s Opp'n at 6.  According to Plaintiff, after Thomas falsely accused Smith of having a "'personality conflict' with her coworkers in the O.R.," which resulted in her termination, Defendants "replaced her with Raj who is of the same national origin as Thomas."  *Id.* at 7; *see also* PAC ¶¶ 48-51.  However, even accepting as true Plaintiff's allegation that Thomas proffered the false accusation that Smith had a personality conflict with her coworkers in the operating room, Plaintiff does not allege that Thomas played any role in Raj being made a full-time PCMS Coordinator upon Plaintiff's termination.  Similarly, although Plaintiff alleges that both Mercy and Aesculap had "the authority over personnel decisions for defendant Aesculap, including the decision to request Aesculap hire or fire individuals assigned by Aesculap to Mercy," *see id.* at ¶ 21, she neither alleges that Thomas had the authority to make personnel decisions or promotion recommendations nor claims that Thomas actually requested that Raj replace Plaintiff as a full-time PCMS Coordinator upon Plaintiff's termination.  As Plaintiff "fails to plead any facts that would create an inference that any adverse action taken by any defendant was based upon a protected characteristic," Smith's allegations are insufficient to support a claim for race or national origin discrimination under either Title VII or the NYSHRL.  *Bivens v. Inst. for Cmty. Living, Inc.*, No. 14 Civ. 7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (internal alterations omitted); *see also Ray v. Weit*, No. 13-CV-6416, 2015 WL 1299198, at *10-12 (E.D.N.Y. Mar. 20, 2015)

(granting the defendants' motion to dismiss where the plaintiff "fail[ed] to allege facts sufficient to infer the fourth element insofar as [the plaintiff] ha[d] not alleged anything to indicate, other than to have invoked Title VII, that [her] treatment was *because* she was an African American or female") (emphasis in original).  Therefore, Defendants' motions to dismiss Smith's claims for race and national origin discrimination arising under Title VII and the NYSHRL are granted.

### B.  Unpaid Overtime Claims under the FLSA and NYLL

Pursuant to both the FLSA and NYLL, "employees working more than forty hours per week [must] be compensated for overtime work at a rate of one-and-a-half times their standard rate." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. 2010); *see also* 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (adopting the FLSA's provisions and exemptions); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) ("The NYLL, like the FLSA, requires that employers pay one and one-half times an employee's regular rate of work performed in excess of forty hours a week."); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions.").  To adequately state a claim for unpaid overtime under the FLSA or NYLL, the plaintiff "must provide sufficient detail about the length and frequency of [his or her] unpaid work to support a reasonable inference that [he or she] worked more than forty hours in a given week." *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (granting the defendant's motion to dismiss where the plaintiff's claims arising under the FLSA and NYLL merely "tracked the statutory language of the FLSA"); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (holding that a plaintiff must plead "sufficient factual matter to state a

plausible claim that [he or she] worked compensable overtime in a workweek longer than 40 hours").

Plaintiff's allegations in the Proposed Amended Complaint, accepted as true, are sufficient at this stage of the proceedings to support an inference that Smith is entitled to unpaid overtime compensation under the FLSA and NYLL.   According to Plaintiff, although she was only scheduled to work Monday through Friday from 9:00 a.m. until 6:00 p.m., for a total of forty (40) hours per week, she actually worked until 8:00 p.m. at least two (2) days per week every week, and worked an additional eight (8) hours on at least two (2) weekends per month every month. PAC ¶¶ 56-57.  Therefore, Plaintiff alleges that, for *every week* she was scheduled to work forty (40) hours, she actually "worked at least 44 hours to as much as 52 or more hours per week." *Id.* at ¶ 58.  Accordingly, Smith alleges that, despite working in excess of forty (40) hours per week *every* week, Defendants only paid her for the first forty (40) hours that she worked in violation of the FLSA and NYLL.  *Id.* at ¶¶ 58-59.  As Plaintiff alleges a specific number of hours in excess of forty (40) that she worked every week, including the number of days per week and month that she worked hours in excess of those for which she was actually scheduled to work, she plausibly alleges that she is entitled to unpaid overtime compensation under the FLSA and NYLL.  *See Leon v. Port Washington Union Free Sch. Dist.*, 49 F. Supp. 3d 353, 357-58 (E.D.N.Y. 2014) (holding that the plaintiff stated a claim for unpaid overtime compensation under the FLSA and NYLL where she "allege[d] that she regularly worked forty hours per week, and provided sufficient estimates of how much additional time she worked each week"); *see also Morales v. Rochdale Vill., Inc.*, No. 15-CV-502, 2015 WL 6442590, at *3 (E.D.N.Y. Oct. 23, 2015) (holding that the plaintiff stated a claim for unpaid overtime compensation based upon her allegations of "two improper wage and hour practices . . . combined with her allegations regarding her regularly

scheduled forty hour work week"); *DiSimone v. CN Plumbing, Inc.*, No. 13-CV-5088, 2014 WL 1281728, at \*4 (E.D.N.Y. Mar. 31, 2014) (denying the defendant's motion to dismiss where the plaintiff's allegations went "far beyond merely rephrasing the FLSA's formulation specifically set forth in the statute") (internal quotation and alteration omitted); *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 456 (E.D.N.Y. 2014) (denying the defendant's motion to dismiss the plaintiffs' claims arising under the FLSA and NYLL where the plaintiffs alleged "specifics with respect to their shift hours and the numbers of days they worked per week").

In moving to dismiss Plaintiff's claims arising under the FLSA and NYLL, Defendants rely upon *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013), *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013), and *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013) in support of their argument that Plaintiff's "vague description of her time spent at work lacks sufficient detail to support a reasonable inference that she worked a total of more than 40 compensable hours in a given workweek and that she was not compensated for those hours."  Mercy's Mem. at 14; *see also* Aesculap's Mem. at 9-12.  Courts applying *Lundy*, *Nakahata*, and *DeJesus* have held that "an FLSA plaintiff must provide a certain degree of specificity as to uncompensated hours worked during a *particular* week."  *See Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 196 (E.D.N.Y. 2015) (emphasis in original); *see also Bustillos v. Acad. Bus, LLC*, No. 13 Civ. 565, 2014 WL 116012, at \*3 (S.D.N.Y. Jan. 13, 2014) (holding that the plaintiff failed to state a claim arising under the FLSA or NYLL because, "absent any factual allegations that give context to [the plaintiff's] claim, the Court cannot say that his claim is any more plausible . . . than the pleadings rejected by the Second Circuit" in *DeJesus*).  Here, Plaintiff does more than merely "repeat the language of the statute," *DeJesus*, 726 F.3d at 89, as she alleges that she worked in excess of forty (40) hours *every week*,

provides an estimated range of hours in excess of forty (40) that she worked per week, and identifies specific scheduling irregularities accounting for the hours in excess of forty (40) that she worked every week.  PAC ¶¶ 56-60.  Therefore, Plaintiff's allegations, accepted as true, are "distinguishable from the 'threadbare allegations dismissed by the Second Circuit in *Lundy*, *Nakahata*, and *DeJesus*.'  *Leon*, 49 F. Supp. 3d at 358; *see also Chime*, 137 F. Supp. 3d at 196-97 (holding that the plaintiff's allegations were sufficient where they "provide[d] the precise specificity—*i.e.* work in excess of forty hours in a *given work week*—mandated by *Lundy* and its progeny") (emphasis in original); *cf. Amponin v. Olayan Am. Corp.*, No. 14 Civ. 2008, 2015 WL 1190080, at *3 (S.D.N.Y. Mar. 16, 2015) (granting the defendant's motion to dismiss where the plaintiff's "allegations identif[ied] neither a specific week during which she worked more than forty hours, nor the specific number of hours she worked during any such week").  As Plaintiff's allegations are sufficient to support a plausible inference that she is entitled to unpaid overtime compensation under the FLSA and NYLL, Defendants' motions to dismiss Plaintiff's claims for unpaid overtime arising under the FLSA and NYLL are denied.

## IV.    CONCLUSION

For the reasons set forth herein Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are both granted in part and denied in part.  Defendants' motions are granted with respect to Plaintiff's claims for race and national origin discrimination arising under Title VII and the NYSHRL.  Defendants' motions are denied with respect to Plaintiff's claims for unpaid overtime compensation under the FLSA and NYLL.  Plaintiff is granted leave to replead her claims arising under the FLSA and NYLL in an amended complaint to be filed within thirty (30) days of the date of the instant Opinion and Order.

Dated: Central Islip, New York
      June 6, 2017

**SO ORDERED.**

_s/ Sandra J. Feuerstein_
Sandra J. Feuerstein
United States District Judge

17